IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOFTWARE RESTORE SOLUTIONS, LLC, an Illinois limited liability company, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  Civil Action No. _____<br><br>The Honorable _____<br><br>Magistrate Judge _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| Plaintiff, | |
| v. | |
| APPLE, INC., a California corporation, ACTIVISION BLIZZARD, INC., a Delaware corporation, ADOBE SYSTEMS, INC., a Delaware corporation, AUTODESK, INC., a Delaware corporation, CAPCOM U.S.A., INC., a California corporation, CITRIX SYSTEMS, INC., a Delaware corporation, COREL CORP., a Canadian corporation, COREL, INC., a Delaware corporation, DASSAULT SYSTEMES, CORP., a Delaware corporation, DELCAM USA, INC., a Utah corporation, SQUARE ENIX, INC., a Washington corporation, ELECTRONIC ARTS, INC., a Delaware corporation, FRONTRANGE SOLUTIONS, INC., a Delaware corporation, INTERNATIONAL BUSINESS MACHINES CORP., a New York corporation, INTUIT, INC., a Delaware corporation, KONAMI DIGITAL ENTERTAINMENT, INC., an Illinois corporation, MAXIMIZER SOFTWARE, INC., a Canadian corporation, NUANCE COMMUNICATIONS, INC., a Delaware corporation, PARAMETRIC TECHNOLOGY CORP., a Massachusetts corporation, SAGE SOFTWARE, INC., a Virginia corporation, SEGA OF AMERICA, INC., a California corporation, SKYPE, INC., a Delaware corporation, SPSS, INC., a Delaware corporation, TERADATA CORP., a Delaware corporation, THQ, INC., a Delaware corporation, and LEGACY INTERACTIVE, INC., a California corporation, | |
| Defendants. | |

Plaintiff, Software Restore Solutions, LLC ("SRS"), complains against Defendants Apple, Inc. ("Apple"), Activision Blizzard, Inc. ("Activision"), Adobe Systems, Inc. ("Adobe"), Autodesk, Inc. ("Autodesk"), Capcom U.S.A., Inc. ("Capcom"), Citrix Systems, Inc. ("Citrix"), Corel Corp. and Corel, Inc. (collectively, "the Corel Defendants"), Dassault Systemes, Corp. ("Dassault"), Delcam USA, Inc. ("Delcam"), Square Enix, Inc. ("Square Enix"), Electronic Arts, Inc. ("EA"), Frontrange Solutions, Inc. ("Frontrange"), International Business Machines Corp. ("IBM"), Intuit, Inc. ("Intuit"), Konami Digital Entertainment, Inc. ("Konami"), Maximizer Software, Inc. ("Maximizer"), Nuance Communications, Inc. ("Nuance"), Parametric Technology Corp. ("PTC"), Sage Software, Inc. ("Sage"), SEGA of America, Inc. ("SEGA"), Skype, Inc. ("Skype"), SPSS, Inc. ("SPSS"), Teradata Corp. ("Teradata"), THQ, Inc. ("THQ"), and Legacy Interactive, Inc. ("Legacy"), (collectively, "Defendants"), as follows:

## NATURE OF ACTION

This is an action for patent infringement pursuant to 35 U.S.C. § 271.  The patented technology relates to software-based methods and systems for the efficient management of the set-up configuration of computer software applications.  The patented technology enables, among other features, the automatic detection and resetting of computer software to a preferred configuration status upon discovery of certain configuration discrepancies.  The Defendants each make, use, offer to sell, sell and/or import software that incorporates the patented technology.

## THE PARTIES

1.     SRS is a limited liability company organized and existing under the laws of the State of Illinois with its principal place of business at 707 Skokie Boulevard, Suite 600, Northbrook, Illinois 60062.  SRS is in the business of licensing its patented technology.

2.     Apple is a corporation incorporated under the laws of the State of California with its principal place of business at 1 Infinite Loop, Cupertino, California, 95014.  Apple, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Apple, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software and other products to customers in this District.  Apple is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

3.     Activision is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 3100 Ocean Park Boulevard, Santa Monica, California 90405.  Activision, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Activision, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

4.     Adobe is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 345 Park Avenue, San Jose, California 95110.  Adobe, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Adobe, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.  Adobe is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

5.     Autodesk is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 111 McInnis Parkway, San Rafael, California 94903.  Autodesk, by itself, and through one or more other entities owned, controlled or otherwise affiliated with

Autodesk, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. Autodesk is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

6.     Capcom is a corporation incorporated under the laws of the State of California with its principal place of business at 800 Concar Drive, San Mateo, California 94402. Capcom, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Capcom, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

7.     Citrix is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 851 West Cypress Creek Road, Fort Lauderdale, Florida 33309. Citrix, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Citrix, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. Citrix is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

8.     Corel Corp. is a corporation organized under the laws of the Country of Canada with its principal place of business at 1600 Carling Avenue, Ottawa, Ontario K1Z 8R7 Canada. Corel Corp., by itself, and through one or more other entities owned, controlled or otherwise affiliated with Corel Corp., conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

9.      Corel, Inc. is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 385 Ravendale Drive, Mountain View, California 94043. Corel, Inc., by itself, and through one or more other entities owned, controlled or otherwise affiliated with Corel, Inc., conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. Corel, Inc. is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

10.     Dassault is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 2 MacArthur Place, Santa Ana, California 92707. Dassault, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Dassault, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

11.     Delcam is a corporation incorporated under the laws of the State of Utah with its principal place of business at 275 East South Temple, Salt Lake City, Utah 84111. Delcam, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Delcam, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

12.     Square Enix is a corporation incorporated under the laws of the State of Washington with its principal place of business at 999 North Sepulveda Boulevard, El Segundo, California 90245. Square Enix, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Square Enix, conducts business in and is doing business in Illinois and in this District

and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

13.   EA is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 209 Redwood Shores Parkway, Redwood City, California 94065.  EA, by itself, and through one or more other entities owned, controlled or otherwise affiliated with EA, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.  EA is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

14.   Frontrange is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 5675 Gibraltar Drive, Pleasanton, California 94588.  Frontrange, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Frontrange, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

15.   IBM is a corporation incorporated under the laws of the State of New York with its principal place of business at New Orchard Road, Armonk, New York 10504.  IBM, by itself, and through one or more other entities owned, controlled or otherwise affiliated with IBM, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software and other products to customers in this District.  IBM is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

16.     Intuit is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 2700 Coast Avenue, Mountain View, California 94043. Intuit, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Intuit, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

17.     Konami is a corporation incorporated under the laws of the State of Illinois with its principal place of business at 2381 Rosecrans Avenue, El Segundo, California 90245. Konami, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Konami, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. Konami is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

18.     Maximizer is a corporation organized under the laws of the Country of Canada with its principal place of business at 1090 West Pender Street, Vancouver, British Columbia V6E 2N7 Canada. Maximizer, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Maximizer, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

19.     Nuance is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 1 Wayside Road, Burlington, Massachusetts 01803. Nuance, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Nuance, conducts business in and is doing business in Illinois and in this District and elsewhere in the United

States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

20.     PTC is a corporation incorporated under the laws of the State of Massachusetts with its principal place of business at 140 Kendrick Street, Needham, Massachusetts 02494.  PTC, by itself, and through one or more other entities owned, controlled or otherwise affiliated with PTC, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.  PTC is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

21.     Sage is a corporation incorporated under the laws of the State of Virginia with its principal place of business at 56 Technology Drive, Irvine, California 92618.  Sage, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Sage, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

22.     SEGA is a corporation incorporated under the laws of the State of California with its principal place of business at 350 Rhode Island Street, San Francisco, California 94103.  SEGA, by itself, and through one or more other entities owned, controlled or otherwise affiliated with SEGA, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.  SEGA is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

23.     Skype is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 2145 Hamilton Avenue, San Jose, California 95125.  Skype, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Skype, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products and telecommunication services to customers in this District.

24.     SPSS is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 233 South Wacker Drive, Chicago, Illinois 60606.  SPSS, by itself, and through one or more other entities owned, controlled or otherwise affiliated with SPSS, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.  SPSS is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

25.     Teradata is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 2835 Miami Village Drive, Dayton, Ohio 45342.  Teradata, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Teradata, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.  Teradata is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

26.     THQ is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 29903 Agoura Road, Agoura Hills, California 91301.  THQ, by itself, and through one or more other entities owned, controlled or otherwise affiliated with THQ, conducts

business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

27.     Legacy is a corporation incorporated under the laws of the State of California with its principal place of business at 617 West 7th Street, Los Angeles, California 90017.  Legacy, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Legacy, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

<u>**JURISDICTION AND VENUE**</u>

28.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

29.     On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Illinois Long Arm Statute, due at least to its substantial business conducted in this forum, including having (i) solicited business in the State of Illinois, transacted business within the State of Illinois and attempted to derive financial benefit from residents of the State of Illinois, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed its products and services into the stream of commerce throughout the United States and having transacted business in Illinois and in this District; and (iii) either alone or in conjunction with others, having committed acts of infringement within this District, induced others to commit acts of infringement within this District, and/or contributed to infringing activities within this District.

30.     Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because each Defendant is subject to personal jurisdiction in this District, resides in, has regularly conducted business in this District and/or has committed acts of patent infringement in this District.

### INFRINGEMENT OF THE '511 PATENT

31.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 30, as if fully set forth herein.

32.     On November 3, 1998, U.S. Patent No. 5,832,511 ("the '511 patent"), entitled "Workgroup Network Manager For Controlling The Operation Of Workstations Within The Computer Network," a copy of which is attached hereto as Exhibit A, was duly and legally issued to inventors Robert E. Beck and Ronald L. Schoenberger.  The inventors originally assigned all right, title and interest in the '511 patent to Beck Systems, Inc., an Illinois corporation having a place of business in Arlington Heights, Illinois.  Beck Systems, Inc. subsequently assigned all of its right, title and interest in the '511 patent to Acacia Patent Acquisition LLC, which further assigned all right, title and interest in the '511 patent to SRS.  SRS is currently the exclusive owner of the '511 patent and has the right to sue for and recover all past, present and future damages and other legal and equitable relief available for infringement of the '511 patent.

33.     Defendant Apple, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Apple has been and is engaged in direct infringing activities with respect to at least the Apple iTunes software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software

application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Apple Software").

34.     Defendant Apple has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Apple Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Apple in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Apple on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Apple Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Apple is further liable for direct infringement of at least claim 32 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Apple Software, such that Apple is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

35.     Plaintiff pleads in the alternative that Apple, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Apple Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Apple Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and

settings established by Apple in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Apple on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Apple Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Apple has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

36.     Plaintiff further pleads in the alternative that Apple, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Apple Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Apple in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

37.     Apple's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

38.     Unless enjoined by the Court, Apple will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

39.     Defendant Activision, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Activision has been and is engaged in direct infringing activities with respect to at least the Madagascar: Escape 2 Africa software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Activision Software").

40.     Defendant Activision has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Activision Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Activision in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Activision on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Activision Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Activision is further liable for direct infringement of at least claim 32 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software

components of end user's computers according to the requirements of and subject to the control of the Accused Activision Software, such that Activision is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

41.     Plaintiff pleads in the alternative that Activision, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Activision Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Activision Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Activision in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Activision on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Activision Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Activision has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

42.     Plaintiff further pleads in the alternative that Activision, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Activision Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or

offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Activision in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

43.     Activision's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

44.     Unless enjoined by the Court, Activision will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

45.     Defendant Adobe, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Adobe has been and is engaged in direct infringing activities with respect to at least the Photoshop CS2 software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Adobe Software").

46.     Defendant Adobe has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Adobe Software that is designed and intended to enable and control automated repair functionality in accordance with

application configuration and management specifications and settings established by Adobe in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Adobe on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Adobe Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Adobe is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Adobe Software, such that Adobe is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

47.     Plaintiff pleads in the alternative that Adobe, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Adobe Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Adobe Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Adobe in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Adobe on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Adobe Software; (3) providing instructions and directions to end users regarding the installation and management of the

software; and (4) providing ongoing support and maintenance for the software to end users.  Adobe has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

48.     Plaintiff further pleads in the alternative that Adobe, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Adobe Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Adobe in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

49.     Adobe's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

50.     Unless enjoined by the Court, Adobe will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

51.     Defendant Autodesk, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the

United States and within this District. Autodesk has been and is engaged in direct infringing activities with respect to at least the Autodesk Algor Simulation and Autodesk 3dx Max software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Autodesk Software").

52. Defendant Autodesk has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Autodesk Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Autodesk in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Autodesk on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Autodesk Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Autodesk is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Autodesk Software, such that Autodesk is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

53. Plaintiff pleads in the alternative that Autodesk, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce

the direct infringement by end users of the Accused Autodesk Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Autodesk Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Autodesk in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Autodesk on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Autodesk Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Autodesk has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

54.     Plaintiff further pleads in the alternative that Autodesk, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Autodesk Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Autodesk in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made

or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

55.     Autodesk's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

56.     Unless enjoined by the Court, Autodesk will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

57.     Defendant Capcom, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Capcom has been and is engaged in direct infringing activities with respect to at least the Devil May Cry software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Capcom Software").

58.     Defendant Capcom has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or  offering for sale the Accused Capcom Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Capcom in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Capcom on a computer of an end user, each step of the patented method is performed in a manner

dictated by the Accused Capcom Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Capcom is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Capcom Software, such that Capcom is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

59.   Plaintiff pleads in the alternative that Capcom, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Capcom Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Capcom Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Capcom in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Capcom on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Capcom Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Capcom has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate

indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

60.     Plaintiff further pleads in the alternative that Capcom, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Capcom Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Capcom in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

61.     Capcom's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

62.     Unless enjoined by the Court, Capcom will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

63.     Defendant Citrix, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Citrix has been and is engaged in direct infringing activities with respect to at least the XenCenter 5.5 software application products and possibly other products, which have been

designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Citrix Software").

64.     Defendant Citrix has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Citrix Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Citrix in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Citrix on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Citrix Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Citrix is further liable for direct infringement of at least claim 32 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Citrix Software, such that Citrix is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

65.     Plaintiff pleads in the alternative that Citrix, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Citrix Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Citrix Software that is designed and intended to enable and control automated

repair functionality in accordance with application configuration and management specifications and settings established by Citrix in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Citrix on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Citrix Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Citrix has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

66.     Plaintiff further pleads in the alternative that Citrix, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Citrix Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Citrix in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

67.     Citrix's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

68.     Unless enjoined by the Court, Citrix will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

69.     The Corel Defendants, and each of them, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  The Corel Defendants have been and are engaged in direct infringing activities with respect to at least the WordPerfect software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Corel Software").

70.     The Corel Defendants have practiced and continue to practice infringing methods by at least one or more of: (1) providing, selling and/or  offering for sale the Accused Corel Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by the Corel Defendants in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by the Corel Defendants on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Corel Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  The Corel Defendants are further liable for direct infringement of at least claim 32 of the '511 patent because they practice,

direct and control the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Corel Software, such that the Corel Defendants are jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

71.     Plaintiff pleads in the alternative that the Corel Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and/or will continue to induce the direct infringement by end users of the Accused Corel Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Corel Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by the Corel Defendants in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by the Corel Defendants on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Corel Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  The Corel Defendants have engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

72.     Plaintiff further pleads in the alternative that the Corel Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and/or will continue to contribute to the direct infringement by end users of the

Accused Corel Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by the Corel Defendants in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

73.     The Corel Defendants' direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

74.     Unless enjoined by the Court, the Corel Defendants will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

75.     Defendant Dassault, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Dassault has been and is engaged in direct infringing activities with respect to at least the Dymola software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Dassault Software").

76.     Defendant Dassault has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Dassault Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Dassault in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Dassault on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Dassault Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Dassault is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Dassault Software, such that Dassault is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

77.     Plaintiff pleads in the alternative that Dassault, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Dassault Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Dassault Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Dassault in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and

managed such that, when the software is operated as intended by Dassault on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Dassault Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Dassault has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

78.   Plaintiff further pleads in the alternative that Dassault, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Dassault Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Dassault in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

79.   Dassault's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

80.   Unless enjoined by the Court, Dassault will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

81.     Defendant Delcam, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Delcam has been and is engaged in direct infringing activities with respect to at least the PowerSHAPE-e 2010 software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Delcam Software").

82.     Defendant Delcam has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or  offering for sale the Accused Delcam Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Delcam in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Delcam on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Delcam Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Delcam is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused

Delcam Software, such that Delcam is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

83.     Plaintiff pleads in the alternative that Delcam, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Delcam Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or  offering for sale the Accused Delcam Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Delcam in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Delcam on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Delcam Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Delcam has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

84.     Plaintiff further pleads in the alternative that Delcam, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Delcam Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair

functionality in accordance with application configuration and management specifications and settings established and provided by Delcam in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

85.     Delcam's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

86.     Unless enjoined by the Court, Delcam will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

87.     Defendant Square Enix, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Square Enix has been and is engaged in direct infringing activities with respect to at least the Battlestations: Pacific software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Square Enix Software").

88.     Defendant Square Enix has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or  offering for sale the Accused Square Enix Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established

by Square Enix in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Square Enix on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Square Enix Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Square Enix is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Square Enix Software, such that Square Enix is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

89.     Plaintiff pleads in the alternative that Square Enix, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Square Enix Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Square Enix Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Square Enix in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Square Enix on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Square Enix Software; (3) providing instructions and directions to end users regarding the

installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Square Enix has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

90.     Plaintiff further pleads in the alternative that Square Enix, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Square Enix Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Square Enix in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

91.     Square Enix's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

92.     Unless enjoined by the Court, Square Enix will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

93.     Defendant EA, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software

products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  EA has been and is engaged in direct infringing activities with respect to at least the Hellgate London software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused EA Software").

94.    Defendant EA has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or  offering for sale the Accused EA Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by EA in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by EA on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused EA Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   EA is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused EA Software, such that EA is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

95.    Plaintiff pleads in the alternative that EA, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct

infringement by end users of the Accused EA Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused EA Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by EA in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by EA on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused EA Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  EA has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

96.     Plaintiff further pleads in the alternative that EA, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused EA Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by EA in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

97.     EA's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

98.     Unless enjoined by the Court, EA will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

99.     Defendant Frontrange, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Frontrange has been and is engaged in direct infringing activities with respect to at least the Goldmine Premium Edition software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Frontrange Software").

100.    Defendant Frontrange has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or  offering for sale the Accused Frontrange Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Frontrange in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Frontrange on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Frontrange Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4)

providing ongoing support and maintenance for the software to end users.   Frontrange is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Frontrange Software, such that Frontrange is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

101.    Plaintiff pleads in the alternative that Frontrange, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Frontrange Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or  offering for sale the Accused Frontrange Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Frontrange in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Frontrange on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Frontrange Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Frontrange has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

102.    Plaintiff further pleads in the alternative that Frontrange, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Frontrange Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Frontrange in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

103.    Frontrange's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

104.    Unless enjoined by the Court, Frontrange will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

105.    Defendant IBM, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  IBM has been and is engaged in direct infringing activities with respect to at least the Lotus Notes software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the

software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused IBM Software").

106.     Defendant IBM has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or  offering for sale the Accused IBM Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by IBM in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by IBM on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused IBM Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   IBM is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused IBM Software, such that IBM is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

107.     Plaintiff pleads in the alternative that IBM, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused IBM Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused IBM Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management

specifications and settings established by IBM in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by IBM on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused IBM Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  IBM has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

108.    Plaintiff further pleads in the alternative that IBM, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused IBM Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by IBM in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

109.    IBM's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

110.     Unless enjoined by the Court, IBM will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

111.     Defendant Intuit, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Intuit has been and is engaged in direct infringing activities with respect to at least the Quick Books Accountant 2010 software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Intuit Software").

112.     Defendant Intuit has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Intuit Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Intuit in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Intuit on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Intuit Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Intuit is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of

end user's computers according to the requirements of and subject to the control of the Accused Intuit Software, such that Intuit is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

113.    Plaintiff pleads in the alternative that Intuit, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Intuit Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Intuit Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Intuit in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Intuit on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Intuit Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Intuit has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

114.    Plaintiff further pleads in the alternative that Intuit, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Intuit Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated

repair functionality in accordance with application configuration and management specifications and settings established and provided by Intuit in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

115.    Intuit's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

116.    Unless enjoined by the Court, Intuit will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

117.    Defendant Konami, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Konami has been and is engaged in direct infringing activities with respect to at least the Pro Evolution Soccer software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Konami Software").

118.    Defendant Konami has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Konami Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Konami in

connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Konami on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Konami Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Konami is further liable for direct infringement of at least claim 32 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Konami Software, such that Konami is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

119.     Plaintiff pleads in the alternative that Konami, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Konami Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Konami Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Konami in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Konami on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Konami Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to

end users.  Konami has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

120.    Plaintiff further pleads in the alternative that Konami, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Konami Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Konami in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

121.    Konami's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

122.    Unless enjoined by the Court, Konami will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

123.    Defendant Maximizer, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the

United States and within this District.  Maximizer has been and is engaged in direct infringing activities with respect to at least the Maximizer CRM 10 Entrepreneur Edition software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Maximizer Software").

124.   Defendant Maximizer has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or  offering for sale the Accused Maximizer Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Maximizer in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Maximizer on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Maximizer Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Maximizer is further liable for direct infringement of at least claims 32 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Maximizer Software, such that Maximizer is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

125.    Plaintiff pleads in the alternative that Maximizer, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Maximizer Software of at least claims 32 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Maximizer Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Maximizer in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Maximizer on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Maximizer Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Maximizer has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

126.    Plaintiff further pleads in the alternative that Maximizer, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Maximizer Software of at least claims 32 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Maximizer in connection with the software for use by end users

in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

127.    Maximizer's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

128.    Unless enjoined by the Court, Maximizer will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

129.    Defendant Nuance, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Nuance has been and is engaged in direct infringing activities with respect to at least the PDF Converter 3 software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Nuance Software").

130.    Defendant Nuance has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Nuance Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Nuance in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended

by Nuance on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Nuance Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Nuance is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Nuance Software, such that Nuance is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

131.    Plaintiff pleads in the alternative that Nuance, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Nuance Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or  offering for sale the Accused Nuance Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Nuance in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Nuance on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Nuance Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Nuance has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate

indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

132.   Plaintiff further pleads in the alternative that Nuance, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Nuance Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Nuance in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

133.   Nuance's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

134.   Unless enjoined by the Court, Nuance will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

135.   Defendant PTC, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  PTC has been and is engaged in direct infringing activities with respect to at least the Mathcad software application products and possibly other products,

which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused PTC Software").

136.    Defendant PTC has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused PTC Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by PTC in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by PTC on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused PTC Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   PTC is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused PTC Software, such that PTC is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

137.    Plaintiff pleads in the alternative that PTC, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused PTC Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused PTC Software that is designed and intended to enable and control

automated repair functionality in accordance with application configuration and management specifications and settings established by PTC in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by PTC on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused PTC Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. PTC has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

138.   Plaintiff further pleads in the alternative that PTC, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused PTC Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by PTC in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

139.   PTC's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

140.     Unless enjoined by the Court, PTC will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

141.     Defendant Sage, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Sage has been and is engaged in direct infringing activities with respect to at least the Simply Accounting software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Sage Software").

142.     Defendant Sage has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or  offering for sale the Accused Sage Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Sage in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Sage on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Sage Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Sage is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of

end user's computers according to the requirements of and subject to the control of the Accused Sage Software, such that Sage is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

143.    Plaintiff pleads in the alternative that Sage, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Sage Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Sage Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Sage in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Sage on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Sage Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Sage has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

144.    Plaintiff further pleads in the alternative that Sage, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Sage Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair

functionality in accordance with application configuration and management specifications and settings established and provided by Sage in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

145.    Sage's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

146.    Unless enjoined by the Court, Sage will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

147.    Defendant SEGA, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32 and 33 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  SEGA has been and is engaged in direct infringing activities with respect to at least the SEGA Rally REVO software application product and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused SEGA Software").

148.    Defendant SEGA has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused SEGA Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by SEGA in

connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by SEGA on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused SEGA Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. SEGA is further liable for direct infringement of at least claims 32 and 33 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused SEGA Software, such that SEGA is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

149.    Plaintiff pleads in the alternative that SEGA, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused SEGA Software of at least claims 32 and 33 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused SEGA Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by SEGA in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by SEGA on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused SEGA Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. SEGA

has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

150.    Plaintiff further pleads in the alternative that SEGA, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused SEGA Software of at least claims 32 and 33 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by SEGA in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

151.    SEGA's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

152.    Unless enjoined by the Court, SEGA will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

153.    Defendant Skype, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Skype has been and is engaged in direct infringing activities with respect to at

least the Skype 4.1 software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Skype Software").

154.   Defendant Skype has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Skype Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Skype in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Skype on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Skype Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Skype is further liable for direct infringement of at least claims 32 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Skype Software, such that Skype is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

155.   Plaintiff pleads in the alternative that Skype, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Skype Software of at least claims 32 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or

offering for sale the Accused Skype Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Skype in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Skype on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Skype Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Skype has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

156.    Plaintiff further pleads in the alternative that Skype, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Skype Software of at least claims 32 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Skype in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

157.    Skype's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

158.    Unless enjoined by the Court, Skype will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

159.    Defendant SPSS, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  SPSS has been and is engaged in direct infringing activities with respect to at least the IBM SPSS Statistics software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused SPSS Software").

160.    Defendant SPSS has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused SPSS Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by SPSS in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by SPSS on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused SPSS Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and

maintenance for the software to end users.   SPSS is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused SPSS Software, such that SPSS is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

161.    Plaintiff pleads in the alternative that SPSS, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused SPSS Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused SPSS Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by SPSS in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by SPSS on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused SPSS Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   SPSS has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

162.    Plaintiff further pleads in the alternative that SPSS, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to

contribute to the direct infringement by end users of the Accused SPSS Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by SPSS in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

163.    SPSS's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

164.    Unless enjoined by the Court, SPSS will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

165.    Defendant Teradata, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Teradata has been and is engaged in direct infringing activities with respect to at least the Teradata Warehouse Miner software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Teradata Software").

166.    Defendant Teradata has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Teradata Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Teradata in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Teradata on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Teradata Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Teradata is further liable for direct infringement of at least claim 32 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Teradata Software, such that Teradata is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

167.    Plaintiff pleads in the alternative that Teradata, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Teradata Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Teradata Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Teradata in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and

managed such that, when the software is operated as intended by Teradata on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Teradata Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Teradata has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

168.    Plaintiff further pleads in the alternative that Teradata, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Teradata Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Teradata in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

169.    Teradata's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

170.    Unless enjoined by the Court, Teradata will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

171.    Defendant THQ, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  THQ has been and is engaged in direct infringing activities with respect to at least the Cars software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused THQ Software").

172.    Defendant THQ has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or  offering for sale the Accused THQ Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by THQ in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by THQ on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused THQ Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   THQ is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused

THQ Software, such that THQ is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

173.    Plaintiff pleads in the alternative that THQ, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused THQ Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused THQ Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by THQ in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by THQ on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused THQ Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  THQ has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

174.    Plaintiff further pleads in the alternative that THQ, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused THQ Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and

settings established and provided by THQ in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

175.    THQ's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

176.    Unless enjoined by the Court, THQ will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

177.    Defendant Legacy, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Legacy has been and is engaged in direct infringing activities with respect to at least the Law & Order Criminal Intent software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Legacy Software").

178.    Defendant Legacy has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or  offering for sale the Accused Legacy Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Legacy in connection with the software; (2) dictating via its design and instructions to users thereof the manner

in which the software is installed and managed such that, when the software is operated as intended by Legacy on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Legacy Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.   Legacy is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Legacy Software, such that Legacy is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

179.   Plaintiff pleads in the alternative that Legacy, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Legacy Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or  offering for sale the Accused Legacy Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Legacy in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Legacy on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Legacy Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Legacy has engaged and/or will continue to engage in these activities with specific intent

to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

180.    Plaintiff further pleads in the alternative that Legacy, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Legacy Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Legacy in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

181.    Legacy's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

182.    Unless enjoined by the Court, Legacy will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

## **PRAYER FOR RELIEF**

WHEREFORE, SRS prays for:

1.    Judgment that the '511 patent is valid, enforceable, and infringed by each Defendant;

2        Injunctive relief prohibiting each Defendant, its officers, agents, servants, employees, subsidiaries and affiliated companies, and those persons acting in active concert or participation therewith, from engaging in the aforesaid unlawful acts of patent infringement;

3.       An award of damages not less than a reasonable royalty arising out of each Defendant's acts of patent infringement, together with pre-judgment and post-judgment interest;

4.       Judgment that the damages so adjudged be trebled in accordance with 35 U.S.C. § 284;

5.       An award of SRS's attorneys' fees, costs and expenses incurred in this action in accordance with 35 U.S.C. § 285; and

6.       Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

SRS demands trial by jury of all issues triable of right by a jury.

## RESERVATION OF RIGHTS

SRS's investigation is ongoing, and certain material information remains in the sole possession of the Defendants or third parties, which will be obtained via discovery herein.  SRS expressly reserves the right to amend or supplement the causes of action set forth herein in accordance with Rule 15 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Date:   <u>June 11, 2010</u>            <u>  /s/Timothy P. Maloney                        </u>

Timothy P. Maloney (IL 6216483)
Alison A. Richards (IL 6285669)
Nicole L. Little (IL 6297047)
David A. Gosse (IL 6299892)
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

Steven C. Schroer (IL 6250991)
scschr@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY
1942 Broadway, Suite 213
Boulder, Colorado 80302
Telephone: 303.402.6966
Facsimile: 303.402.6970

*Counsel for Plaintiff*