IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE RESTORE SOLUTIONS, LLC, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| APPLE, INC., a California corporation, ACTIVISION BLIZZARD, INC., a Delaware corporation, ADOBE SYSTEMS, INC., a Delaware corporation, AUTODESK, INC., a Delaware corporation, CAPCOM U.S.A., INC., a California corporation, CITRIX SYSTEMS, INC., a Delaware corporation, COREL CORP., a Canadian corporation, COREL, INC., a Delaware corporation, DASSAULT SYSTEMES, CORP., a Delaware corporation, DELCAM USA, INC., a Utah corporation, SQUARE ENIX, INC., a Washington corporation, ELECTRONIC ARTS, INC., a Delaware corporation, FRONTRANGE SOLUTIONS, INC., a Delaware corporation, INTERNATIONAL BUSINESS MACHINES CORP., a New York corporation, INTUIT, INC., a Delaware corporation, KONAMI DIGITAL ENTERTAINMENT, INC., an Illinois corporation, MAXIMIZER SOFTWARE, INC., a Canadian corporation, NUANCE COMMUNICATIONS, INC., a Delaware corporation, PARAMETRIC TECHNOLOGY CORP., a Massachusetts corporation, SAGE SOFTWARE, INC., a Virginia corporation, SEGA OF AMERICA, INC., a California corporation, SKYPE, INC., a Delaware corporation, SPSS, INC., a Delaware corporation, TERADATA CORP., a Delaware corporation, THQ, INC., a Delaware corporation, and LEGACY INTERACTIVE, INC., a California corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 1:10-cv-03628<br><br>The Honorable Virginia M. Kendall<br><br>Magistrate Judge –<br>The Honorable Arlander Keys<br><br>JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

4711402v1

## DEFENDANT PARAMETRIC TECHNOLOGY CORP.'S ANSWER
## TO PLAINTIFF'S COMPLAINT, DEFENSE AND JURY DEMAND

Defendant Parametric Technology Corp. ("PTC"), by and through its attorneys, hereby submits its Answer to Plaintiff Software Restore Solutions, LLC's ("SRS") Complaint, its defenses, counterclaims and jury demand as follows:

## GENERAL ALLEGATIONS

### THE PARTIES

1.      SRS is a limited liability company organized and existing under the laws of the State of Illinois with its principal place of business at 707 Skokie Boulevard, Suite 600, Northbrook, Illinois 60062.  SRS is in the business of licensing its patented technology.

**ANSWER:**   PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 1, and therefore denies those allegations.

2.      Apple is a corporation incorporated under the laws of the State of California with its principal place of business at 1 Infinite Loop, Cupertino, California, 95014.  Apple, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Apple, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software and other products to customers in this District.  Apple is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

**ANSWER:**   PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 2, and therefore denies those allegations.

3.      Activision is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 3100 Ocean Park Boulevard, Santa Monica, California 90405.  Activision, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Activision, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

**ANSWER:**   PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 3, and therefore denies those allegations.

4.      Adobe is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 345 Park Avenue, San Jose, California 95110.  Adobe, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Adobe, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling

2

software products to customers in this District. Adobe is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 4, and therefore denies those allegations.

5. Autodesk is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 111 McInnis Parkway, San Rafael, California 94903. Autodesk, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Autodesk, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. Autodesk is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 5, and therefore denies those allegations.

6. Capcom is a corporation incorporated under the laws of the State of California with its principal place of business at 800 Concar Drive, San Mateo, California 94402. Capcom, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Capcom, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 6, and therefore denies those allegations.

7. Citrix is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 851 West Cypress Creek Road, Fort Lauderdale, Florida 33309. Citrix, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Citrix, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. Citrix is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 7, and therefore denies those allegations.

8. Corel Corp. is a corporation organized under the laws of the Country of Canada with its principal place of business at 1600 Carling Avenue, Ottawa, Ontario KlZ 8R7 Canada. Corel Corp., by itself, and through one or more other entities owned, controlled or otherwise affiliated with Corel Corp., conducts business in and is doing business in Illinois and in this

District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 8, and therefore denies those allegations.

9.     Corel, Inc. is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 385 Ravendale Drive, Mountain View, California 94043. Corel, Inc., by itself, and through one or more other entities owned, controlled or otherwise affiliated with Corel, Inc., conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. Corel, Inc. is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 9, and therefore denies those allegations.

10.     Dassault is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 2 MacArthur Place, Santa Ana, California 92707. Dassault, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Dassault, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 10, and therefore denies those allegations.

11.     Delcam is a corporation incorporated under the laws of the State of Utah with its principal place of business at 275 East South Temple, Salt Lake City, Utah 84111. Delcam, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Delcam, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 11, and therefore denies those allegations.

12.     Square Enix is a corporation incorporated under the laws of the State of Washington with its principal place of business at 999 North Sepulveda Boulevard, El Segundo, California 90245. Square Enix, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Square Enix, conducts business in and is doing business in

Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 12, and therefore denies those allegations.

13. EA is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 209 Redwood Shores Parkway, Redwood City, California 94065. EA, by itself, and through one or more other entities owned, controlled or otherwise affiliated with EA, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. EA is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 13, and therefore denies those allegations.

14. Frontrange is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 5675 Gibraltar Drive, Pleasanton, California 94588. Frontrange, by itself and through one or more other entities owned, controlled or otherwise affiliated with Frontrange, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 14, and therefore denies those allegations.

15. IBM is a corporation incorporated under the laws of the State of New York with its principal place of business at New Orchard Road, Armonk, New York 10504. IBM, by itself, and through one or more other entities owned, controlled or otherwise affiliated with IBM, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software and other products to customers in this District. IBM is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 15, and therefore denies those allegations.

16. Intuit is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 2700 Coast Avenue, Mountain View, California 94043. Intuit, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Intuit, conducts business in and is doing business in Illinois and in this District and elsewhere in

the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

      **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 16, and therefore denies those allegations.

      17.    Konami is a corporation incorporated under the laws of the State of Illinois with its principal place of business at 2381 Rosecrans Avenue, El Segundo, California 90245. Konami, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Konami, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. Konami is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

      **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 17, and therefore denies those allegations.

      18.    Maximizer is a corporation organized under the laws of the Country of Canada with its principal place of business at 1090 West Pender Street, Vancouver, British Columbia V6E 2N7 Canada. Maximizer, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Maximizer, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

      **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 18, and therefore denies those allegations.

      19.    Nuance is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 1 Wayside Road, Burlington, Massachusetts 01803. Nuance, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Nuance, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

      **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 19, and therefore denies those allegations.

      20.    PTC is a corporation incorporated under the laws of the State of Massachusetts with its principal place of business at 140 Kendrick Street, Needham, Massachusetts 02494. PTC, by itself, and through one or more other entities owned, controlled or otherwise affiliated with PTC, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to

4711402v1

sell and selling software products to customers in this District. PTC is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

**ANSWER:** Admitted.

21. Sage is a corporation incorporated under the laws of the State of Virginia with its principal place of business at 56 Technology Drive, Irvine, California 92618. Sage, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Sage, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 21, and therefore denies those allegations.

22. SEGA is a corporation incorporated under the laws of the State of California with its principal place of business at 350 Rhode Island Street, San Francisco, California 94103. SEGA, by itself, and through one or more other entities owned, controlled or otherwise affiliated with SEGA, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. SEGA is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 22, and therefore denies those allegations.

23. Skype is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 2145 Hamilton Avenue, San Jose, California 95125. Skype, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Skype, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products and telecommunication services to customers in this District.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 34, and therefore denies those allegations.

24. SPSS is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 233 South Wacker Drive, Chicago, lllinois 60606. SPSS, by itself, and through one or more other entities owned, controlled or otherwise affiliated with SPSS, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. SPSS is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

4711402v1

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 34, and therefore denies those allegations.

25. Teradata is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 2835 Miami Village Drive, Dayton, Ohio 45342. Teradata, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Teradata, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District. Teradata is registered to do business in Illinois and has a designated registered agent in Illinois for purposes of service of process.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 34, and therefore denies those allegations.

26. THQ is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 29903 Agoura Road, Agoura Hills, California 91301. THQ, by itself, and through one or more other entities owned, controlled or otherwise affiliated with THQ, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 34, and therefore denies those allegations.

27. Legacy is a corporation incorporated under the laws of the State of California with its principal place of business at 617 West 7th Street, Los Angeles, California 90017. Legacy, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Legacy, conducts business in and is doing business in Illinois and in this District and elsewhere in the United States, including, without limitation, supplying, promoting, offering to sell and selling software products to customers in this District.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 34, and therefore denies those allegations.

## JURISDICTION AND VENUE

28. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 et seq. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** Admitted.

4711402v1

29.     On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Illinois Long Arm Statute, due at least to its substantial business conducted in this forum, including having (i) solicited business in the State of Illinois, transacted business within the State of Illinois and attempted to derive financial benefit from residents of the State of Illinois, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed its products and services into the stream of commerce throughout the United States and having transacted business in Illinois and in this District; and (iii) either alone or in conjunction with others, having committed acts of infringement within this District, induced others to commit acts of infringement within this District, and/or contributed to infringing activities within this District.

**ANSWER:**     To the extent paragraph 29 contains allegations directed at PTC, those

allegations are denied on the grounds that PTC has committed no act of patent infringement.  To

the extent paragraph 29 contains additional allegations related to the other defendants, PTC lacks

knowledge and information sufficient to form a belief as to the truth of the allegations, and

therefore denies those allegations.

30.     Venue lies in this District pursuant to 28 U.S.C. §§ 1391(h), 1391(c), and 1400(b) because each Defendant is subject to personal jurisdiction in this District, resides in, has regularly conducted business in this District and/or has committed acts of patent infringement in this District.

**ANSWER:**     To the extent paragraph 30 contains allegations directed at PTC, those

allegations are denied on the grounds that PTC has committed no act of patent infringement.  To

the extent paragraph 30 contains additional allegations related to the other defendants, PTC lacks

knowledge and information sufficient to form a belief as to the truth of the allegations, and

therefore denies those allegations.

## INFRINGEMENT OF THE '511 PATENT

31.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 30, as if fully set forth herein.

**ANSWER:**     PTC incorporates by reference, as if set forth in full herein, its answers to

paragraphs 1-30 of the Complaint.

32.     On November 3, 1998, U.S. Patent No. 5,832,511 ("the '511 patent"), entitled "Workgroup Network Manager For Controlling The Operation Of Workstations Within The

9

Computer Network," a copy of which is attached hereto as Exhibit A, was duly and legally issued to inventors Robert E. Beck and Ronald L. Schoenberger. The inventors originally assigned all right, title and interest in the '511 patent to Beck Systems, Inc., an Illinois corporation having a place of business in Arlington Heights, Illinois. Beck Systems, Inc. subsequently assigned all of its right, title and interest in the '511 patent to Acacia Patent Acquisition LLC, which further assigned all right, title and interest in the '511 patent to SRS. SRS is currently the exclusive owner of the '511 patent and has the right to sue for and recover all past, present and future damages and other legal and equitable relief available for infringement of the '511 patent.

**ANSWER:** PTC admits that, on its face, U.S. Patent No. 5,832,511 (the "'511 patent") is entitled "Workgroup Network Manager For Controlling The Operation Of Workstations Within The Computer Network," and purports to have been issued to inventors Robert E. Beck and Ronald L. Schoenberger on November 3, 1998. PTC also admits that, on its face, the '511 patent lists Beck Systems, Inc. as the sole assignee. PTC is without information or knowledge sufficient to form a belief as to the truth of the remainder of the allegations of paragraph 32 of the Complaint and therefore denies such allegations.

33. Defendant Apple, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claim 32 of the '511 patent pursuant to 35 U. S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. Apple has been and is engaged in direct infringing activities with respect to at least the Apple iTunes software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Apple Software").

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 33, and therefore denies those allegations.

34. Defendant Apple has practiced and continues to practice infringing methods by at least one or more of (1) providing, selling and/or offering for sale the Accused Apple Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Apple in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Apple on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Apple Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and

(4) providing ongoing support and maintenance for the software to end users.  Apple is further liable for direct infringement of at least claim 32 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Apple Software, such that Apple is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

> **ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 34, and therefore denies those allegations.

35. Plaintiff pleads in the alternative that Apple, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Apple Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Apple Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Apple in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Apple on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Apple Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Apple has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

> **ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 35, and therefore denies those allegations.

36. Plaintiff further pleads in the alternative that Apple, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Apple Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Apple in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

> **ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 36, and therefore denies those allegations.

4711402v1

37.     Apple's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 37, and therefore denies those allegations.

38.     Unless enjoined by the Court, Apple will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 38, and therefore denies those allegations.

39.     Defendant Activision, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Activision has been and is engaged in direct infringing activities with respect to at least the Madagascar: Escape 2 Africa software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Activision Software").

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 39, and therefore denies those allegations.

40.     Defendant Activision has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Activision Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Activision in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Activision on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Activision Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Activision is further liable for direct infringement of at least claim 32 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Activision Software, such that Activision is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

12

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 40, and therefore denies those allegations.

41.     Plaintiff pleads in the alternative that Activision, by itself and/or through its
subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to
induce the direct infringement by end users of the Accused Activision Software of at least claim
32 of the `511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing,
selling and/or offering for sale the Accused Activision Software that is designed and intended to
enable and control automated repair functionality in accordance with application configuration
and management specifications and settings established by Activision in connection with the
software; (2) dictating via its design and instructions to users thereof the manner in which the
software is installed and managed such that, when the software is operated as intended by
Activision on a computer of an end user, each step of the patented method is performed in a
manner dictated by the Accused Activision Software; (3) providing instructions and directions to
end users regarding the installation and management of the software; and (4) providing ongoing
support and maintenance for the software to end users.  Activision has engaged and/or will
continue to engage in these activities with specific intent to cause and/or encourage such direct
infringement of the '511 patent and/or with deliberate indifference of a known risk that such
activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 41, and therefore denies those allegations.

42.     Plaintiff further pleads in the alternative that Activision, by itself and/or through
its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will
continue to contribute to the direct infringement by end users of the Accused Activision Software
of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling
and/or offering for sale the software that is designed and intended to enable and control
automated repair functionality in accordance with application configuration and management
specifications and settings established and provided by Activision in connection with the
software for use by end users in practicing the patented methods, knowing that such software is
especially made or especially adapted for use in infringing the patented methods and not a staple
article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 42, and therefore denies those allegations.

43.     Activision's direct infringement, contributory infringement and/or inducement to
infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to
compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 43, and therefore denies those allegations.

44.     Unless enjoined by the Court, Activision will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 44, and therefore denies those allegations.

45.     Defendant Adobe, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. Adobe has been and is engaged in direct infringing activities with respect to at least the Photoshop CS2 software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Adobe Software").

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 45, and therefore denies those allegations.

46.     Defendant Adobe has practiced and continues to practice infringing methods by at least one or more of (1) providing, selling and/or offering for sale the Accused Adobe Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Adobe in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Adobe on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Adobe Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Adobe is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Adobe Software, such that Adobe is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 46, and therefore denies those allegations.

47.     Plaintiff pleads in the alternative that Adobe, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Adobe Software of at least claims 32, 33, 34 and 36 of the `511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of:

14

(1) providing, selling and/or offering for sale the Accused Adobe Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Adobe in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Adobe on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Adobe Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Adobe has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 47, and therefore denies those allegations.

48. Plaintiff further pleads in the alternative that Adobe, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Adobe Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Adobe in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 48, and therefore denies those allegations.

49. Adobe's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 49, and therefore denies those allegations.

50. Unless enjoined by the Court, Adobe will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 50, and therefore denies those allegations.

4711402v1

51.     Defendant Autodesk, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Autodesk has been and is engaged in direct infringing activities with respect to at least the Autodesk Algor Simulation and Autodesk 3dx Max software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Autodesk Software").

        **ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 51, and therefore denies those allegations.

52.     Defendant Autodesk has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Autodesk Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Autodesk in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Autodesk on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Autodesk Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Autodesk is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Autodesk Software, such that Autodesk is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

        **ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 52, and therefore denies those allegations.

53.     Plaintiff pleads in the alternative that Autodesk, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Autodesk Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Autodesk Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Autodesk in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Autodesk on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Autodesk Software; (3) providing instructions and directions to

16

end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Autodesk has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 53, and therefore denies those allegations.

54. Plaintiff further pleads in the alternative that Autodesk, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Autodesk Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U. S. C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Autodesk in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 54, and therefore denies those allegations.

55. Autodesk's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 55, and therefore denies those allegations.

56. Unless enjoined by the Court, Autodesk will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 56, and therefore denies those allegations.

57. Defendant Capcom, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. Capcom has been and is engaged in direct infringing activities with respect to at least the Devil May Cry software application products and

possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Capcom Software").

      **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 57, and therefore denies those allegations.

      58.    Defendant Capcom has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Capcom Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Capcom in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Capcom on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Capcom Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Capcom is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Capcom Software, such that Capcom is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

      **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 58, and therefore denies those allegations.

      59.    Plaintiff pleads in the alternative that Capcom, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Capcom Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Capcom Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Capcom in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Capcom on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Capcom Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Capcom has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 59, and therefore denies those allegations.

60. Plaintiff further pleads in the alternative that Capcom, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Capcom Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Capcom in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 60, and therefore denies those allegations.

61. Capcom's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 61, and therefore denies those allegations.

62. Unless enjoined by the Court, Capcom will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 62, and therefore denies those allegations.

63. Defendant Citrix, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. Citrix has been and is engaged in direct infringing activities with respect to at least the XenCenter 5.5 software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Citrix Software").

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 63, and therefore denies those allegations.

64. Defendant Citrix has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Citrix Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Citrix in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Citrix on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Citrix Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Citrix is further liable for direct infringement of at least claim 32 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Citrix Software, such that Citrix is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 64, and therefore denies those allegations.

65. Plaintiff pleads in the alternative that Citrix, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Citrix Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Citrix Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Citrix in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Citrix on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Citrix Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Citrix has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 65, and therefore denies those allegations.

66. Plaintiff further pleads in the alternative that Citrix, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to

contribute to the direct infringement by end users of the Accused Citrix Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Citrix in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 66, and therefore denies those allegations.

67.    Citrix's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 67, and therefore denies those allegations.

68.    Unless enjoined by the Court, Citrix will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 68, and therefore denies those allegations.

69.    The Corel Defendants, and each of them, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. The Corel Defendants have been and are engaged in direct infringing activities with respect to at least the WordPerfect software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Corel Software").

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 69, and therefore denies those allegations.

70.    The Corel Defendants have practiced and continue to practice infringing methods by at least one or more of:  (1) providing, selling and/or offering for sale the Accused Corel Software that is designed and intended to enable and control automated repair functionality in

4711402v1

accordance with application configuration and management specifications and settings established by the Corel Defendants in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by the Corel Defendants on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Corel Software; (3) providing instructions and directions to users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. The Corel Defendants are further liable for direct infringement of at least claim 32 of the '511 patent because they practice, direct and control the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Corel Software, such that the Corel Defendants are jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

      **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 70, and therefore denies those allegations.

      71.    Plaintiff pleads in the alternative that the Corel Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and/or will continue to induce the direct infringement by end users of the Accused Corel Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Corel Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by the Corel Defendants in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by the Corel Defendants on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Corel Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. The Corel Defendants have engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

      **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 71, and therefore denies those allegations.

      72.    Plaintiff further pleads in the alternative that the Corel Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Corel Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by the Corel Defendants in

connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 72, and therefore denies those allegations.

73.    The Corel Defendants' direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 73, and therefore denies those allegations.

74.    Unless enjoined by the Court, the Corel Defendants will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 74, and therefore denies those allegations.

75.    Defendant Dassault, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. Dassault has been and is engaged in direct infringing activities with respect to at least the Dymola software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Dassault Software").

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 75, and therefore denies those allegations.

76.    Defendant Dassault has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Dassault Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Dassault in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Dassault on a computer of an end user, each step of

the patented method is performed in a manner dictated by the Accused Dassault Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Dassault is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Dassault Software, such that Dassault is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 76, and therefore denies those allegations.

77. Plaintiff pleads in the alternative that Dassault, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Dassault Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U. S. C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Dassault Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Dassault in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Dassault on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Dassault Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Dassault has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 77, and therefore denies those allegations.

78. Plaintiff further pleads in the alternative that Dassault, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Dassault Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Dassault in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 78, and therefore denies those allegations.

79. Dassault's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U. S.C. § 284.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 79, and therefore denies those allegations.

80. Unless enjoined by the Court, Dassault will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 80, and therefore denies those allegations.

81. Defendant Delcam, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. Delcam has been and is engaged in direct infringing activities with respect to at least the PowerSHAPE-e 2010 software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Delcam Software").

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 81, and therefore denies those allegations.

82. Defendant Delcam has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Delcam Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Delcam in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Delcam on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Delcam Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Delcam is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof

which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Delcam Software, such that Delcam is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 82, and therefore denies those allegations.

83. Plaintiff pleads in the alternative that Delcam, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Delcam Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U. S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Delcam Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Delcam in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Delcam on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Delcam Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Delcam has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 83, and therefore denies those allegations.

84. Plaintiff further pleads in the alternative that Delcam, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Delcam Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Delcam in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 84, and therefore denies those allegations.

4711402v1

85.     Delcam's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 84, and therefore denies those allegations.

86.     Unless enjoined by the Court, Delcam will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 86, and therefore denies those allegations.

87.     Defendant Square Enix, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the 511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Square Enix has been and is engaged in direct infringing activities with respect to at least the Battlestations:  Pacific software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Square Enix Software").

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 87, and therefore denies those allegations.

88.     Defendant Square Enix has practiced and continues to practice infringing methods by at least one or more of:  (1) providing, selling and/or offering for sale the Accused Square Enix Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Square Enix in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Square Enix on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Square Enix Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Square Enix is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Square Enix Software, such that Square Enix is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 88, and therefore denies those allegations.

89. Plaintiff pleads in the alternative that Square Enix, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Square Enix Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Square Enix Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Square Enix in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Square Enix on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Square Enix Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Square Enix has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 89, and therefore denies those allegations.

90. Plaintiff further pleads in the alternative that Square Enix, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Square Enix Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Square Enix in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 90, and therefore denies those allegations.

91. Square Enix's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

4711402v1

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 91, and therefore denies those allegations.

92. Unless enjoined by the Court, Square Enix will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 92, and therefore denies those allegations.

93. Defendant EA, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. EA has been and is engaged in direct infringing activities with respect to at least the Hellgate London software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused EA Software").

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 93, and therefore denies those allegations.

94. Defendant EA has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused EA Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by EA in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by EA on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused EA Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. EA is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused EA Software, such that EA is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 94, and therefore denies those allegations.

95. Plaintiff pleads in the alternative that EA, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused EA Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused EA Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by EA in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by EA on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused EA Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. EA has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 95, and therefore denies those allegations.

96. Plaintiff further pleads in the alternative that EA, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused EA Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by EA in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 96, and therefore denies those allegations.

97. EA' s direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 97, and therefore denies those allegations.

98. Unless enjoined by the Court, EA will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

4711402v1

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 98, and therefore denies those allegations.

99. Defendant Frontrange, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. Frontrange has been and is engaged in direct infringing activities with respect to at least the Goldmine Premium Edition software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Frontrange Software").

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 99, and therefore denies those allegations.

100. Defendant Frontrange has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Frontrange Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Frontrange in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Frontrange on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Frontrange Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Frontrange is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Frontrange Software, such that Frontrange is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 100, and therefore denies those allegations.

101. Plaintiff pleads in the alternative that Frontrange, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Frontrange Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Frontrange Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Frontrange

in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Frontrange on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Frontrange Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Frontrange has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

      **ANSWER:**   PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 101, and therefore denies those allegations.

      102.    Plaintiff further pleads in the alternative that Frontrange, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Frontrange Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Frontrange in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

      **ANSWER:**   PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 102, and therefore denies those allegations.

      103.    Frontrange's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

      **ANSWER:**   PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 103, and therefore denies those allegations.

      104.    Unless enjoined by the Court, Frontrange will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

      **ANSWER:**   PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 104, and therefore denies those allegations.

4711402v1

105.    Defendant IBM, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the `511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  IBM has been and is engaged in direct infringing activities with respect to at least the Lotus Notes software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused IBM Software").

        **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 105, and therefore denies those allegations.

106.    Defendant IBM has practiced and continues to practice infringing methods by at least one or more of:  (1) providing, selling and/or offering for sale the Accused IBM Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by IBM in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by IBM on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused IBM Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  IBM is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused IBM Software, such that IBM is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

        **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 106, and therefore denies those allegations.

107.    Plaintiff pleads in the alternative that IBM, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused IBM Software of at least claims 32, 33, 34 and 36 of the `511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused IBM Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by IBM in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by IBM on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused IBM Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  IBM has engaged and/or will continue to engage in

these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

     **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 107, and therefore denies those allegations.

    108.    Plaintiff further pleads in the alternative that IBM, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused IBM Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by IBM in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

     **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 108, and therefore denies those allegations.

    109.    IBM's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

     **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 109, and therefore denies those allegations.

    110.    Unless enjoined by the Court, IBM will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

     **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 110, and therefore denies those allegations.

    111.    Defendant Intuit, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the `511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Intuit has been and is engaged in direct infringing activities with respect to at least the Quick Books Accountant 2010 software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred

configuration during use based on an automated comparison of prior and current configuration status ("Accused Intuit Software").

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 111, and therefore denies those allegations.

112. Defendant Intuit has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Intuit Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Intuit in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Intuit on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Intuit Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Intuit is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Intuit Software, such that Intuit is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 112, and therefore denies those allegations.

113. Plaintiff pleads in the alternative that Intuit, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Intuit Software of at least claims 32, 33, 34 and 36 of the `511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Intuit Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Intuit in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Intuit on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Intuit Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Intuit has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 113, and therefore denies those allegations.

114. Plaintiff further pleads in the alternative that Intuit, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Intuit Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Intuit in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 114, and therefore denies those allegations.

115. Intuit's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 115, and therefore denies those allegations.

116. Unless enjoined by the Court, Intuit will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 116, and therefore denies those allegations.

117. Defendant Konami, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. Konami has been and is engaged in direct infringing activities with respect to at least the Pro Evolution Soccer software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Konami Software").

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 117, and therefore denies those allegations.

118. Defendant Konami has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused Konami Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Konami in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Konami on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Konami Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Konami is further liable for direct infringement of at least claim 32 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Konami Software, such that Konami is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 118, and therefore denies those allegations.

119. Plaintiff pleads in the alternative that Konami, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Konami Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Konami Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Konami in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Konami on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Konami Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Konami has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 119, and therefore denies those allegations.

4711402v1

120.    Plaintiff further pleads in the alternative that Konami, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Konami Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Konami in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

        **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 120, and therefore denies those allegations.

121.    Konami's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

        **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 121, and therefore denies those allegations.

122.    Unless enjoined by the Court, Konami will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

        **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 122, and therefore denies those allegations.

123.    Defendant Maximizer, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32 and 36 of the `511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Maximizer has been and is engaged in direct infringing activities with respect to at least the Maximizer CRM 10 Entrepreneur Edition software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Maximizer Software").

        **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 123, and therefore denies those allegations.

124.     Defendant Maximizer has practiced and continues to practice infringing methods by at least one or more of:  (1) providing, selling and/or offering for sale the Accused Maximizer Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Maximizer in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Maximizer on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Maximizer Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Maximizer is further liable for direct infringement of at least claims 32 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Maximizer Software, such that Maximizer is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 124, and therefore denies those allegations.

125.     Plaintiff pleads in the alternative that Maximizer, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Maximizer Software of at least claims 32 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Maximizer Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Maximizer in connection with the software; (2) dictating via its design and instructions to users thereof the manner, in which the software is installed and managed such that, when the software is operated as intended by Maximizer on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Maximizer Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Maximizer has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 125, and therefore denies those allegations.

126.     Plaintiff further pleads in the alternative that Maximizer, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Maximizer Software of at least claims 32 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by

39

providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Maximizer in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

       **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 126, and therefore denies those allegations.

     127.    Maximizer's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

       **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 127, and therefore denies those allegations.

     128.    Unless enjoined by the Court, Maximizer will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

       **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 128, and therefore denies those allegations.

     129.    Defendant Nuance, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the `511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Nuance has been and is engaged in direct infringing activities with respect to at least the PDF Converter 3 software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Nuance Software").

       **ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 129, and therefore denies those allegations.

     130.    Defendant Nuance has practiced and continues to practice infringing methods by at least one or more of:  (1) providing, selling and/or offering for sale the Accused Nuance Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Nuance in connection with the software; (2) dictating via its design and

instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Nuance on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Nuance Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Nuance is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Nuance Software, such that Nuance is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 130, and therefore denies those allegations.

131. Plaintiff pleads in the alternative that Nuance, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Nuance Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Nuance Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Nuance in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Nuance on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Nuance Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Nuance has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 131, and therefore denies those allegations.

132. Plaintiff further pleads in the alternative that Nuance, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Nuance Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Nuance in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 132, and therefore denies those allegations.

133. Nuance's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 133, and therefore denies those allegations.

134. Unless enjoined by the Court, Nuance will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 134, and therefore denies those allegations.

135. Defendant PTC, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. PTC has been and is engaged in direct infringing activities with respect to at least the Mathcad software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused PTC Software").

**ANSWER:** PTC denies the allegations of paragraph 135.

136. Defendant PTC has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused PTC Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by PTC in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by PTC on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused PTC Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. PTC is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused PTC Software, such that PTC is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

42

**ANSWER:** PTC denies the allegations of paragraph 136.

137. Plaintiff pleads in the alternative that PTC, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused PTC Software of at least claims 32, 33, 34 and 36 of the `511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused PTC Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by PTC in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by PTC on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused PTC Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. PTC has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC denies the allegations of paragraph 137.

138. Plaintiff further pleads in the alternative that PTC, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused PTC Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by PTC in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC denies the allegations of paragraph 138.

139. PTC's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** PTC denies the allegations of paragraph 139.

140. Unless enjoined by the Court, PTC will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:** PTC denies the allegations of paragraph 140.

43

141.    Defendant Sage, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Sage has been and is engaged in direct infringing activities with respect to at least the Simply Accounting software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Sage Software").

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 141, and therefore denies those allegations.

142.    Defendant Sage has practiced and continues to practice infringing methods by at least one or more of:  (1) providing, selling and/or offering for sale the Accused Sage Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Sage in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Sage on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Sage Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Sage is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Sage Software, such that Sage is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 142, and therefore denies those allegations.

143.    Plaintiff pleads in the alternative that Sage, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Sage Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Sage Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Sage in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Sage on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Sage Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Sage has engaged and/or will continue to engage

in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 143, and therefore denies those allegations.

144. Plaintiff further pleads in the alternative that Sage, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Sage Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U. S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Sage in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 144, and therefore denies those allegations.

145. Sage's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 145, and therefore denies those allegations.

146. Unless enjoined by the Court, Sage will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 146, and therefore denies those allegations.

147. Defendant SEGA, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32 and 33 of the '511 patent pursuant to 35 U. S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. SEGA has been and is engaged in direct infringing activities with respect to at least the SEGA Rally REVO software application product and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based

45

on an automated comparison of prior and current configuration status ("Accused SEGA Software").

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 147, and therefore denies those allegations.

148. Defendant SEGA has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused SEGA Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by SEGA in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by SEGA on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused SEGA Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. SEGA is further liable for direct infringement of at least claims 32 and 33 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused SEGA Software, such that SEGA is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 148, and therefore denies those allegations.

149. Plaintiff pleads in the alternative that SEGA, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused SEGA Software of at least claims 32 and 33 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused SEGA Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by SEGA in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by SEGA on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused SEGA Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. SEGA has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 149, and therefore denies those allegations.

150.     Plaintiff further pleads in the alternative that SEGA, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused SEGA Software of at least claims 32 and 33 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by SEGA in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 150, and therefore denies those allegations.

151.     SEGA' s direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U. S.C. § 284.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 151, and therefore denies those allegations.

152.     Unless enjoined by the Court, SEGA will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 152, and therefore denies those allegations.

153.     Defendant Skype, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Skype has been and is engaged in direct infringing activities with respect to at least the Skype 4.1 software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Skype Software").

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 153, and therefore denies those allegations.

154.     Defendant Skype has practiced and continues to practice infringing methods by at least one or more of:  (1) providing, selling and/or offering for sale the Accused Skype Software

47

that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Skype in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Skype on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Skype Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Skype is further liable for direct infringement of at least claims 32 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Skype Software, such that Skype is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 154, and therefore denies those allegations.

155. Plaintiff pleads in the alternative that Skype, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Skype Software of at least claims 32 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Skype Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Skype in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Skype on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Skype Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Skype has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 155, and therefore denies those allegations.

156. Plaintiff further pleads in the alternative that Skype, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Skype Software of at least claims 32 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Skype in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially

made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 156, and therefore denies those allegations.

157. Skype's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 157, and therefore denies those allegations.

158. Unless enjoined by the Court, Skype will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 158, and therefore denies those allegations.

159. Defendant SPSS, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33, 34 and 36 of the `511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. SPSS has been and is engaged in direct infringing activities with respect to at least the IBM SPSS Statistics software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused SPSS Software").

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 159, and therefore denies those allegations.

160. Defendant SPSS has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused SPSS Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by SPSS in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by SPSS on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused SPSS Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and

(4) providing ongoing support and maintenance for the software to end users. SPSS is further liable for direct infringement of at least claims 32, 33, 34 and 36 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused SPSS Software, such that SPSS is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

> **ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 160, and therefore denies those allegations.

161. Plaintiff pleads in the alternative that SPSS, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused SPSS Software of at least claims 32, 33, 34 and 36 of the `511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused SPSS Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by SPSS in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by SPSS on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused SPSS Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. SPSS has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

> **ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 161, and therefore denies those allegations.

162. Plaintiff further pleads in the alternative that SPSS, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused SPSS Software of at least claims 32, 33, 34 and 36 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by SPSS in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

> **ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 162, and therefore denies those allegations.

163.    SPSS's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 163, and therefore denies those allegations.

164.    Unless enjoined by the Court, SPSS will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 164, and therefore denies those allegations.

165.    Defendant Teradata, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claim 32 of the '511 patent pursuant to 35 U. S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Teradata has been and is engaged in direct infringing activities with respect to at least the Teradata Warehouse Miner software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Teradata Software").

**ANSWER:**    PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 165, and therefore denies those allegations.

166.    Defendant Teradata has practiced and continues to practice infringing methods by at least one or more of:  (1) providing, selling and/or offering for sale the Accused Teradata Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Teradata in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Teradata on a computer of an end user, each step of the patented method is performed in a mannier dictated by the Accused Teradata Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Teradata is further liable for direct infringement of at least claim 32 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Teradata Software, such that Teradata is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

51

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 166, and therefore denies those allegations.

167. Plaintiff pleads in the alternative that Teradata, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Teradata Software of at least claim 32 of the `511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of:  (1) providing, selling and/or offering for sale the Accused Teradata Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Teradata in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Teradata on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Teradata Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Teradata has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 167, and therefore denies those allegations.

168. Plaintiff further pleads in the alternative that Teradata, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Teradata Software of at least claim 32 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Teradata in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 168, and therefore denies those allegations.

169. Teradata's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 169, and therefore denies those allegations.

170.     Unless enjoined by the Court, Teradata will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 170, and therefore denies those allegations.

171.     Defendant THQ, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District. THQ has been and is engaged in direct infringing activities with respect to at least the Cars software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused THQ Software").

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 171, and therefore denies those allegations.

172.     Defendant THQ has practiced and continues to practice infringing methods by at least one or more of: (1) providing, selling and/or offering for sale the Accused THQ Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by THQ in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by THQ on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused THQ Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. THQ is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused THQ Software, such that THQ is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

**ANSWER:**     PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 172, and therefore denies those allegations.

173.     Plaintiff pleads in the alternative that THQ, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused THQ Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused THQ Software that is designed and

intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by THQ in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by THQ on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused THQ Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. THQ has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

> **ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 173, and therefore denies those allegations.

174. Plaintiff further pleads in the alternative that THQ, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused THQ Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by THQ in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

> **ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 174, and therefore denies those allegations.

175. THQ's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

> **ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 175, and therefore denies those allegations.

176. Unless enjoined by the Court, THQ will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

> **ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 176, and therefore denies those allegations.

177.    Defendant Legacy, by itself and/or its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(a) by using the methods protected thereby to manage software products made, used, sold, offered for sale, imported and/or otherwise provided within the United States and within this District.  Legacy has been and is engaged in direct infringing activities with respect to at least the Law & Order Criminal Intent software application products and possibly other products, which have been designed to enable automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused Legacy Software").

ANSWER:    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 177, and therefore denies those allegations.

178.    Defendant Legacy has practiced and continues to practice infringing methods by at least one or more of:  (1) providing, selling and/or offering for sale the Accused Legacy Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Legacy in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Legacy on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Legacy Software; (3) providing instructions and directions to end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users.  Legacy is further liable for direct infringement of at least claims 32, 33 and 34 of the '511 patent because it practices, directs and controls the accused methods, including any steps thereof which may be practiced by third-party software components of end user's computers according to the requirements of and subject to the control of the Accused Legacy Software, such that Legacy is jointly and severally and/or vicariously liable for the components and acts provided by any such third-party software.

ANSWER:    PTC lacks knowledge and information sufficient to form a belief as to the

truth of the allegations of paragraph 178, and therefore denies those allegations.

179.    Plaintiff pleads in the alternative that Legacy, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and/or will continue to induce the direct infringement by end users of the Accused Legacy Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (1) providing, selling and/or offering for sale the Accused Legacy Software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established by Legacy in connection with the software; (2) dictating via its design and instructions to users thereof the manner in which the software is installed and managed such that, when the software is operated as intended by Legacy on a computer of an end user, each step of the patented method is performed in a manner dictated by the Accused Legacy Software; (3) providing instructions and directions to

end users regarding the installation and management of the software; and (4) providing ongoing support and maintenance for the software to end users. Legacy has engaged and/or will continue to engage in these activities with specific intent to cause and/or encourage such direct infringement of the '511 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 179, and therefore denies those allegations.

180. Plaintiff further pleads in the alternative that Legacy, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by end users of the Accused Legacy Software of at least claims 32, 33 and 34 of the '511 patent pursuant to 35 U. S.C. § 271(c) at least by providing, selling and/or offering for sale the software that is designed and intended to enable and control automated repair functionality in accordance with application configuration and management specifications and settings established and provided by Legacy in connection with the software for use by end users in practicing the patented methods, knowing that such software is especially made or especially adapted for use in infringing the patented methods and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 180, and therefore denies those allegations.

181. Legacy's direct infringement, contributory infringement and/or inducement to infringe the '511 patent has injured SRS, and SRS is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 181, and therefore denies those allegations.

182. Unless enjoined by the Court, Legacy will continue to injure SRS by directly infringing, contributing to the infringement of and/or inducing the infringement of the '511 patent.

**ANSWER:** PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 183, and therefore denies those allegations.

**PRAYER FOR RELIEF**

WHEREFORE, SRS prays for:

1. Judgment that the '511 patent is valid, enforceable, and infringed by each Defendant;

4711402v1

2.      Injunctive relief prohibiting each Defendants, its officers, agents, servants, employees, subsidiaries and affiliated companies, and those persons acting in active concert or participation therewith, from engaging in the aforesaid unlawful acts of patent infringement;

3.      An award of damages not less than a reasonable royalty arising out of each Defendant's acts of patent infringement, together with pre-judgment and post-judgment interest;

4.      Judgment that the damages so adjudged be trebled in accordance with 35 U.S.C. § 284;

5.      An award of SRS's attorneys' fees, costs and expenses incurred in this action in accordance with 35 U.S.C. § 285; and

6.      Such other and further relief as the Court may deem just and proper.

**ANSWER:**      PTC denies that SRS is entitled to the relief sought in the Prayer for Relief, to the extent it is directed at PTC.  PTC lacks knowledge and information sufficient to form a belief as to the truth of the allegations alleged to support the Prayer for Relief as it is directed at the other defendants, and therefore denies that SRS is entitled to relief from the other defendants as well.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

1.      PTC does not and has not infringed any claims of United States Patent No. 5,832,511 ("the '511 patent"), entitled "Workgroup Network Manager For Controlling The Operation Of Workstations Within The Computer Network."

### Second Affirmative Defense

2.      The claims of the '511 patent are invalid because they fail to satisfy the conditions for patentability stated in Title 35 of the United States Code, including *inter alia*, §§ 101, 102, 103 and 112.

57

4711402v1

<u>Third Affirmative Defense</u>

3.     SRS' claims are barred in whole or in part by virtue of the doctrine of laches. On its face, the '511 patent purports to have been issued to inventors Robert E. Beck and Ronald L. Schoenberger (the "inventors") on November 3, 1998. Upon information and belief, the inventors, SRS and/or its predecessors were aware or should have been aware of the accused Mathcad product, alleged by SRS to infringe the '511 patent, as early as the late 1990s, but failed to make any infringement allegations against PTC until 2010 when the Complaint was filed in this case. SRS' unreasonable delay in filing this action has materially prejudiced PTC.

## COUNTERCLAIMS

PTC asserts the following counterclaims against SRS.

## PARTIES

1.     Counterclaim plaintiff PTC is a Massachusetts corporation with its principal place of business at 140 Kendrick Street, Needham, Massachusetts, 02494.

2.     Counterclaim defendant SRS, upon information and belief, is an Illinois limited liability company with its principal place of business at 707 Skokie Boulevard, Suite 600, Northbrook, Illinois, 60063.

## JURISDICTION AND VENUE

3.     These Counterclaims arise under the patent laws of the United States, as enacted under Title 35 of the United States Code. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338 because this case arises under the patent laws of the United States under 28 U.S.C. §§ 2201-2202 because an actual controversy exists between SRS on the one hand and PTC on the other.

4.      These Counterclaims arise out of the same transaction or occurrence that is the subject matter of SRS' Complaint.  This Court has personal jurisdiction over SRS because SRS itself has submitted to the jurisdiction of this Court by filing its Complaint in this judicial district. The Court also has personal jurisdiction over SRS because it is a resident of Illinois, and upon information and belief, SRS maintains its principal place of business in this district.

5.      In its Complaint, SRS alleges that PTC infringes U.S. Patent No. 5,832,511 ("the '511 patent"), entitled "Workgroup Network Manager For Controlling The Operation Of Workstations Within The Computer Network."  SRS further alleges that PTC has "engaged in infringing activities with respect to at least the Mathcad software application products and possibly other products, which have been designed to enable an automated repair functionality for automatically resetting the software application to a preferred configuration during use based on an automated comparison of prior and current configuration status ("Accused PTC Software")."

6.      Because PTC denies that it infringes any valid claim of the '511 patent, an actual and justiciable controversy has arisen and now exists between PTC and SRS as to whether PTC infringes any claims of the '511 patent and as to whether the '511 patent is invalid.

7.      Venue is proper in this judicial district pursuant to 29 U.S.C. § 1391 because a substantial part of the events that give rise to these counterclaims occurred in this district.

## COUNT I:  DECLARATORY RELIEF REGARDING NON-INFRINGEMENT OF THE '511 PATENT

8.      The allegations of paragraphs 1-7 of these Counterclaims are incorporated by reference, as if set forth in full herein.

9. PTC does not infringe and has not infringed, either directly or indirectly, by any way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, any claim of the '511 patent.

**COUNT II: DECLARATORY RELIEF REGARDING INVALIDITY
OF THE '511 PATENT**

10. The allegations of paragraphs 1-9 of these Counterclaims are incorporated by reference, as if set forth in full herein.

11. The claims of the '511 patent are invalid because they fail to satisfy the conditions for patentability specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112.

**REQUEST FOR RELIEF**

PTC respectfully requests that the Court grant the following relief:

a. Enter judgment that PTC does not infringe and has not infringed, directly or indirectly, by any way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, any claim of the '511 patent.

b. Enter judgment that the claims of the '511 patent are invalid;

c. Declare that PTC does not infringe and has not infringed, directly or indirectly, by any way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, any claim of the '511 patent;

d. Declare that each claim of the '511 patent is invalid.

e. Enter judgment dismissing SRS' Complaint with prejudice;

f. Enter judgment determining that this case is an exceptional case within the meaning of 35 U.S.C. §285, and awarding PTC its costs and reasonable attorney's fees; and

g. such further relief the Court deems just in the circumstances.

60

4711402v1

## DEMAND FOR JURY TRIAL

The counterclaim plaintiff hereby demands a jury trial on all claims and issues triable of

right by a jury.


Dated:  September 10, 2010                    Parametric Technology Corp.

                                    By:      /s/ Michael E. Murawski
                                             One of its attorneys

Kevin Tottis (6193853)
Deirdre A. Fox (6206110)
Law Offices of Kevin Tottis
211 West  Wacker Drive, Suite 1200
Chicago, IL 60606
(312) 920-9550 (phone)
(312) 920-9560 (fax)


Daniel C. Winston (admitted pro hac vice)
Michael E. Murawski (admitted pro hac vice)
Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000 (phone)
(617) 248-4000 (fax)

4711402v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF system on September 10, 2010.

<u> /s/ Michael E. Murawski</u>
Michael E. Murawski

4711402v1